UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEISHA GREENE | : | |
| 1905 E. Venango Street | : | CIVIL ACTION |
| Philadelphia, PA 19134 | : | |
| | : | CASE NO.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| JEFFERSON ABINGTON HOSPITAL | : | |
| 1200 Old York Road | : | |
| Abington, PA 19001 | : | |
| and | : | |
| THOMAS JEFFERSON UNIVERSITY | : | |
| HOSPITALS, INC. | : | |
| d/b/a JEFFERSON HEALTH | : | |
| 1101 Market Street, Jefferson Tower | : | |
| Suite 2400 | : | |
| Philadelphia, PA 19107 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Aleisha Greene ("Plaintiff"), hereby complains as follows against Jefferson

Abington Hospital and Thomas Jefferson University Hospitals, Inc. d/b/a Jefferson Health

(*hereinafter* collectively referred to as "Defendants"), and avers as follows:

**INTRODUCTION**

1.      Plaintiff initiates the instant action to redress Defendants' violations of Title VII of

the Civil Rights Act of 1964, ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.), the Pregnancy

Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA" - Pub. L. No. 117-328,

136 Stat. 4459 (2022)), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§

12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the Pennsylvania Human Relations Act ("PHRA").[1]

2.    Plaintiff asserts herein that her pregnancy status, disabilities, accommodations, and protected activities were determinative/motivating factors in Defendants' decisions not to promote her and terminate her employment.

3.    As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

4.    This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under a law of the United States.

5.    This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

6.    Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants citizens of the Eastern District of Pennsylvania.

---

[1] Plaintiff will move to amend her instant lawsuit to include claims against all Defendants under the PHRA once her administrative remedies are fully exhausted. Any claims under the PHRA would mirror the instant Title VII, ADA and PDA claims identically.

7.      Plaintiff is proceeding herein under the Title VII/PDA, ADA and PWFA, and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

**PARTIES**

8.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9.      Plaintiff is an adult individual, with an address as set forth in the caption.

10.     Jefferson Abington Hospital is a non-profit hospital providing healthcare services out of the above-referenced address.

11.     Thomas Jefferson University Hospitals, d/b/a Jefferson Health is a non-profit entity registered in the Commonwealth of Pennsylvania consisting of hospital and clinical locations. This medical system employs more than 1,500 physicians and practitioners, and more than 2,500 nurses (working per diem, part-time and full-time). This entity is headquartered at 111 South 11th Street, Philadelphia, PA 19107.

12.     Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership of financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

13.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

3

**FACTUAL BACKGROUND**

14.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

15.    Plaintiff was hired by Defendants on or about January 16, 2024 and was employed for more than 1.5 years until she was unlawfully terminated on or about August 4, 2025.

16.    Plaintiff held the position of Patient Access Lead, also referred to as a Seamless Access Lead, and was supervised or interacted with management including Tolanda Fortune ("Fortune" – Supervisor, Patient Access), Roslyn Hanna ("Hanna" – Supervisor, Patient Access), Tracy Jablonski ("Jablonski" – Regional Patient Access Manager), Terri Donohue ("Donohue" – Vice President, Patient Access), and Maureen Niederle ("Niederle" – HR Business Partner).

17.    As of Plaintiff's termination, she was approximately three (3) months pregnant.

18.    Due to suffering from disabilities such as Asthma and Diabetes (among other health compilations), Plaintiff was deemed a high-risk pregnancy.

19.    Plaintiff was also suffering from numerous medical difficulties as a result of her pregnancy and health, such getting ill and having difficulty walking for extended periods of time on certain days (during episodes or flareups).

20.    Plaintiff's management knew she was pregnant. During the month of July 2025, Plaintiff had several discussions with her management, including with Jablonski and Donohue. Plaintiff shared all of the above information about Plaintiff's health and symptoms (and other information) with such management.

21.    Moreover, Plaintiff was asking for modest medical accommodations with respect to her work conditions and mobility.

22.     By way of a single example, Plaintiff was asking to be assigned to an area / section where she would not have to engage in extensive standing or walking when she was having flareups, as there were numerous sections (or duties) she could have been assigned.

23.     However, despite her requests, Plaintiff was typically being assigned the most difficult sections during her pregnancy and health situation, particularly when she was having symptoms at work.

24.     A cursory review of Plaintiff's work schedule would illustrate Plaintiff being repeatedly being placed in the 400 and 600 sections despite her requests for other assignments due to leg swelling and pain.

25.     Furthermore, Plaintiff was point-blank told by Jablonski and Donohue that she would not be granted **any** medical accommodations until she obtained formal medical accommodation paperwork from her physician and was approved for medical accommodations by corporate or human resources, which was a very time-consuming process.

26.     As it turned out, Plaintiff was terminated before she even had the full opportunity to complete this process.

27.     Plaintiff found it outrageous and disgusting that high-level management of a health system and hospital  would refuse to temporarily accommodate her or even consider temporarily accommodating her pending a formal process being followed.

28.     Moreover, Plaintiff felt management was very cold and unempathetic, telling Plaintiff that if she can't work she would need to go on FMLA leave.

29.     Plaintiff was already approved for intermittent FMLA leave and did not need or want to take a block FMLA leave (as was suggested or implied just for asking for pregnancy or

medical accommodations), but was instead requesting to continue working with reasonable accommodations.

30.    As a result of Defendant's responses to Plaintiff's accommodation requests, Plaintiff complained to Hanna that Donohue coldly denied her any consideration or medical accommodations when assigning her to different (less difficult) sections (requiring less standing or mobility) was very easy.

31.    In response, Hanna informed Plaintiff "you should not have gone to Terri for accommodations" . . . she "won't accommodate anyone due to staffing shortages" and Hanna gave Plaintiff an example (by name of another employee) of Donohue also recently telling the employee who asked for a medical accommodations to look for a new job elsewhere if she was going to need requested accommodations.

32.    Additionally, Jablonski had already been exhibiting dislike for FMLA needs and usage. For example, on or about July 9, 2025, she aggressively asked Plaintiff why she needed FMLA and wanted details of what health issues Plaintiff had that would warrant FMLA. Plaintiff told her of her underlying health problems and pregnancy, but she didn't seem from the context of the discussion to believe that Plaintiff needed FMLA (as to Plaintiff's observations and interpretations of her body language and demeanor). Jablonski said she had tried reaching out to Plaintiff for a few days, but that it was hard to get in touch with because she was using FMLA time off (per her).

33.    Prior to July of 2025, Plaintiff had: (a) performed in an exemplary manner; (b) was deemed a model employee: and (c) was expecting to be elevated to a supervisor position (per prior dialogue with management).

34.    However, in questioning Plaintiff about her FMLA and visibly seeming annoyed with Plaintiff's FMLA usage and inability to talk with her while she used FMLA, Jablonski told Plaintiff she decided not to give her a supervisor role (as she was about to be promoted).

35.    During this discussion, Plaintiff had also explained she didn't feel comfortable giving her more health information and explained that she shared enough and had her own rights under HIPPA, as Plaintiff perceived her to be inappropriately invasive.

36.    On or about July 30, 2025, Jablonski approached Plaintiff while she was working on the floor, informing Plaintiff that she had been talking to Donohue about her physical limitations and pregnancy. She further told Plaintiff that pregnant or not, she need to make sure she was on the floor and not seen resting or taking breaks, and that as a lead, Plaintiff had to set an example. Essentially, Plaintiff was being warned not to take even a short break for her health or pregnancy.

37.    On or about August 5, 2025, Defendants' management then told Plaintiff she was being terminated for misconduct by participating with other employees in text messages that constituted a breach of confidentiality as to the content of their discussion.

38.    Given the discriminatory conduct and demeanor towards her leading up to her termination, Plaintiff exclaimed she was really being terminated because she was pregnant and because she was insisting on medical accommodations.

39.    Tellingly, however, management refused to address her discrimination concerns and just restated that she was terminated.

40.    Respondent has repeatedly turned a blind eye and ignored real disciplinary offenses. For example, Plaintiff reported several instances of improper conduct by certain employees (including Sheonna Torres, a non-supervisory coworker). Torres was disrespectful to people, including in the presence of patients. She also used profanity and was unprofessional.

Torres had become known for making false allegations about people in the workplace (even of Plaintiff). Plaintiff also brought to management that employees were using marijuana in the workplace. However, Defendants' management did nothing meaningful, did not discipline or terminate, and Defendants' human resources engaged in no expected investigations. Due to short staffing, Defendants instead elected to run exceeding poorly at the detriment of the public and morale.

41.     As for the purported basis for Plaintiff's termination, that she was being terminated for being in a text chain discussing confidential matters with other employees (thus supposedly violating a code of conduct), the same is entirely pretextual, as *inter alia*:

1. Plaintiff was experiencing significant negativity and antagonism due to her pregnancy, accommodation needs, FMLA usage, and concerns about not being accommodated. Plaintiff had opposed mistreatment expressing concerns at times as well.

2. Plaintiff was terminated in very close temporal proximity to pregnancy, health, and FMLA disclosures and dialogue.

3. Defendants knew of the texts amongst employees for quite a while, and Plaintiff had even been told by Jablonski that the issue was going to be closed without further action against anyone. However, the reasons were later used to justify Plaintiff's termination.

4. Plaintiff was not even part of the text chain. Plaintiff shared with management and human resources that Torres presumably manipulated the chain to give the appearance she was part of the text chain. This was well known before Plaintiff was terminated. But to be clear, Plaintiff was terminated despite not participating in the text chain.

5. Plaintiff was singled out for termination. Not only didn't Defendants discipline or terminate other employees for serious offenses (unrelated to the text chain issue), but Defendant also didn't terminate other employees participating in the text chain who actually violated a code of conduct unlike Plaintiff. Thus, Plaintiff was the only employee terminated for this texting issue.

6. Plaintiff had no history of prior progressive discipline within Defendants, was on the verge of being promoted, and was viewed as a stellar employee by patients, management, and medical staff prior to discussing pregnancy, accommodations, and Plaintiff's FMLA usage.

8

42.     As a result, Plaintiff believes and avers that Defendants failed to accommodate her, failure to promote her, and terminated her because of her pregnancy, disabilities, and in retaliation for engaging in protected activity.

## COUNT I
## Violations of Title VII/PDA
### ([1 ]Pregnancy Discrimination and [2] Retaliation)

43.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.     Plaintiff is qualified under the Title VII/PDA for protection because she was pregnant.

45.     Plaintiff's pregnancy, need for related leave to recover from the same, and her engagement in protected activity were motivating and/or determinative factors in Defendants' decisions not to promote her and terminate her employment.

46.     These actions constitute violations of Title VII/PDA.

## COUNT II
## Violations of the PWFA
### ([1] Interference; [2] Retaliation; and [3] Discrimination)

47.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48.     Plaintiff is qualified under the PWFA for protection because she was pregnant during her employment with Defendants and had requested reasonable accommodations.

49.     Defendant failed to properly accommodate Plaintiff by refusing her any possibility of accommodations before she had the opportunity to complete a lengthy formal process to do so and then terminating her in retaliation for engaging in protected activity including making such requests and/or to prevent her from utilizing such accommodations.

50.    Plaintiff believes and therefore avers that her rights under the PWFA were interfered with, and she was retaliated against for requesting reasonable pregnancy-related medical accommodations.

51.    Defendant's actions as aforesaid constitute violations of the PWFA.

## COUNT IV
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

52.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.    Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

54.    Plaintiff kept Defendants' management informed of her serious medical conditions and need for medical treatment and other accommodations.

55.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

56.    Plaintiff requested reasonable accommodations from Defendants as outlined *supra*.

57.    Plaintiff was subjected to discrimination through disparate treatment, discriminatory commentary, and demeaning and/or derogatory treatment because of her aforesaid health conditions and requested accommodations.

58.    Defendants failed to properly accommodate Plaintiff by refusing her any possibility of accommodations before she had the opportunity to complete a lengthy formal process to do so and then terminating her in retaliation for engaging in protected activity including making such requests and/or to prevent her from utilizing such accommodations.

10

59.    Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of (1) her known and/or perceived pregnancy-related medical conditions/disabilities; (2) her record of impairment; (3) her requested accommodations; and (4) Defendant's failure to properly accommodate Plaintiff's health conditions (set forth *supra*).

60.    Plaintiff also believes and therefore avers that her medical conditions/disabilities, need for accommodations, and engagement in protected activity were motivating and/or determinative factors in Defendants' failure to promote her and in the termination of her employment with Defendants.

61.    These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT III
## Violations of the Family and Medical Leave Act ("FMLA")
### ([1] Retaliation & [2] Interference)

62.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

63.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

64.    Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

65.    Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

66.    Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

11

67.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

68.     Plaintiff was not promoted and ultimately terminated in close proximity to her requests for FMLA leave for care and treatment related to her pregnancy.

69.     Plaintiff was also subjected to disparate treatment, discriminatory commentary, and demeaning and/or derogatory treatment because of her need for and/or utilization of FMLA leave.

70.     Defendant committed interference and/or retaliation violations of the FMLA by: (1) failing to promote and terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decisions not to promote and to terminate her; (3) failing to promote and terminating Plaintiff to intimidate her and/or prevent him from taking FMLA- qualifying leave in the future; and (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

71.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and

12

seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C.      Plaintiff is to be awarded liquidated or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
Timothy S. Seiler, Esq. (316913)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com
tseiler@karpf-law.com

Dated:  April 28, 2026

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Aleisha Greene | : | CIVIL ACTION |
| v. | : | |
| Jefferson Abington Hospital, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 4/28/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: Defendants place of business

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1.  Does this case involve property included in an earlier numbered suit?  Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5.  Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  ***see certification below***
☐ 16. All Other Federal Question Cases. (*Please specify*):_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: (*Please specify*)_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GREENE, ALEISHA | JEFFERSON ABINGTON HOSPITAL, ET AL. |

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane    [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability    [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel &    Pharmaceutical Slander    Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'    Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    [ ] 368 Asbestos Personal [ ] 340 Marine    Injury Product [ ] 345 Marine Product    Liability | | [ ] 835 Patent – Abbreviated New Drug Application [ ] 840 Trademark | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability    **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle    [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle    [ ] 371 Truth in Lending | [ ] 720 Labor/Management | | Protection Act |
| [ ] 195 Contract Product Liability | Product Liability    [ ] 380 Other Personal | Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 360 Other Personal    Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| | Injury    [ ] 385 Property Damage | [ ] 751 Family and Medical | [ ] 862 Black Lung (923) | Exchange |
| | [ ] 362 Personal Injury -    Product Liability | Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | Medical Malpractice | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | [ ] 791 Employee Retirement | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights    **Habeas Corpus:** | Income Security Act | | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting    [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment    [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/    Sentence | | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 245 Tort Product Liability | Accommodations    [ ] 530 General | | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| [ ] 290 All Other Real Property | [X] 445 Amer. w/Disabilities -    [ ] 535 Death Penalty | | 26 USC 7609 | Agency Decision |
| | mployment    **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of |
| | [ ] 446 Amer. w/Disabilities -    [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | State Statutes |
| | Other    [ ] 550 Civil Rights | [ ] 465 Other Immigration | | |
| | [ ] 448 Education    [ ] 555 Prison Condition | Actions | | |
| | [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE    4/28/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____